**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:12-CV-399-GCM-DCK**

| | |
|---|---|
| SPARKLE THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 11) and "Defendant's Motion For Summary Judgment" (Document No. 15). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be <u>denied</u>; that "Defendant's Motion For Summary Judgment" be <u>affirmed</u>; and that the Commissioner's decision be <u>affirmed</u>.

### I. BACKGROUND

Plaintiff Sparkle Thompson ("Plaintiff" or "Thompson"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 1). On January 17, 2008, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §

---

[1] Carolyn W. Colvin is the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

405 *et seq*., alleging an inability to work due to a disabling condition beginning September 20, 2007. (Transcript of the Record of Proceedings ("Tr.") 12). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on February 25, 2008, and again after reconsideration on August 26, 2008. (Tr. 12). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. **Based on the description of the job performed as a customer service representative, we have concluded that you have the functional capacity to meet the functional demands of this type of work**. It has been decided, therefore, that you are **not disabled** according to the Social Security Act.

(Tr. 60) (emphasis added).

Plaintiff filed a timely written request for a hearing on September 15, 2008. (Tr. 12). On November 10, 2009, Plaintiff appeared and testified at a hearing before Administrative Law Judge Clinton C. Hicks ("ALJ"). (Tr. 12, 25-52). In addition, G. Roy Sumpter, a vocational expert ("VE"), and Angela R. Cinski, Plaintiff's attorney, appeared at the hearing. (Tr. 12, 25-27).

The ALJ issued an unfavorable decision on June 11, 2010, denying Plaintiff's claim. (Tr. 9-20). Plaintiff filed a request for review of the ALJ's decision on July 19, 2010, which was denied by the Appeals Council on May 9, 2012. (Tr. 1-3). The June 11, 2010 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on June 28, 2012. (Document No. 1). On June 28, 2012, the undersigned was assigned to this case as the referral magistrate judge. Plaintiff's "Motion For Summary Judgment" (Document No. 11) and "Brief in Support Of Plaintiff's Motion For Summary Judgment" (Document No. 12) were filed November 7, 2012; "Defendant's Motion For Summary Judgment" (Document No. 15) and "Memorandum In Support Of Defendant's Motion For Summary Judgment" (Document No. 15-1) were filed February 20, 2013. Plaintiff filed a "Response to the Order of March 8, 2013" (Document No. 20) on March 15, 2013; and "Defendant's Reply to Plaintiff's Response to Commissioner's Memorandum in Support of Summary Judgment" (Document No. 21) was filed on March 25, 2013.[2] The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is

---

[2] Pursuant to NCWD Local Rule 7.1(E), in an action seeking Judicial Review of an agency decision, such as Social Security Disability and Supplemental Security Insurance benefit actions, the Court generally does not allow the filing of response or reply to motions for summary judgment. However, on March 7, 2013, Plaintiff filed a "Request for Reconsideration" (Document No. 18) of an Order (Document No. 17), which denied Plaintiff's "Motion for Extension of Time to File Response" (Document No. 16). Pursuant to an Order (Document No. 19) filed on March 8, 2013, the Court granted Plaintiff's request to file a response to Defendant's Motion for Summary Judgment (Document No. 15), and ordered Defendant to file a reply brief.

supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Richardson, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between September 20, 2007, and the date of his decision.[3] (Tr. 12). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert,

---

[3] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from September 20, 2007, through the date of his decision, June 11, 2010. (Tr. 12, 19-20).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fourth step that Plaintiff was not disabled. (Tr. 19-20).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since September 20, 2007, her alleged disability onset date. (Tr. 14). At the second step, the ALJ found that pain in the back, knees and arm were severe impairments. (Tr. 14).[4] At the third step, the ALJ determined that Plaintiff did not have an impairment or

---

[4] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

5

combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 15).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light work activity, with the following limitations:

> limited to sitting not more than one hour at a time or standing not more than 30 minutes at a time, that accommodates a change of position from sitting to standing or vice versa at those times, that is, alternating throughout the day; walking for 30 minutes, lifting 20 pounds, occasional bending and stooping, and occasional overhead reaching.

(Tr. 15).

In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." Id. The ALJ further opined that he "has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." Id.

At the fourth step, the ALJ found that Plaintiff "is capable of performing past relevant work . . . as a customer service representative (financial and receptionist) and medical assistant." (Tr. 18). The ALJ specifically concluded that Plaintiff "would still be able to perform her past work as an office assistant, since this job does not require the performance of work-related activities precluded by the claimant's residual functional capacity." Id. The ALJ relied in part on the testimony of a VE to support his conclusion. Id.

In addition, and in the alternative, the ALJ further concluded based on the testimony of the vocational expert and "considering the claimant's age, education, work experience, and residual functional capacity" that even if Plaintiff could not perform her past relevant work, jobs

6

existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 18-19). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included representative occupations such as cashier II, bench assembler, and mail clerk. (Tr. 19, 48-50). Based on the foregoing, the ALJ determined that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between September 20, 2007, and the date of his decision, June 11, 2010. (Tr. 19-20).

Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ failed to give controlling weight to treating physician, Matthew Harrison, M.D.; (2) the ALJ failed to consider the opinion of treating physician John A. Welshofer, M.D.; (3) the ALJ failed to consider Plaintiff's obesity; (4) the ALJ erred by crediting VE testimony that conflicts with DOT findings without an explanation from the VE; and (5) the ALJ failed to properly assess Plaintiff's credibility. (Document No. 12). The undersigned will discuss each of these contentions in turn.

### A. Medical Opinions

The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

> Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight. Rather, according to the regulations promulgated by the Commissioner, a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Thus, by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. Under such circumstances, the ALJ holds the discretion to give less weight to

> the testimony of a treating physician in the face of persuasive contrary evidence.

Pendley v. Astrue, 1:11-CV-309-MR, 2013 WL 819337 (W.D.N.C. Mar. 6, 2013) (quoting Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); see also, Hunter, 993 F.2d at 25; see also, Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

**1. Matthew Harrison, M.D.**

In her first assignment of error, Plaintiff argues that the ALJ's failure to give controlling weight to Matthew Harrison, M.D.'s ("Dr. Harrison") opinion was clear error." (Document No. 12, p.6). Specifically, Plaintiff argues that "[a] treating physician's opinion controls unless it is unsupported by medically acceptable clinical and laboratory diagnostic techniques or . . . is inconsistent with other substantial evidence of record." Id. Plaintiff suggests that the ALJ's decision ignores "Dr. Harrison's opinion regarding the severity of Thompson's back pain [which] is based on solid objective and subjective evidence" and "minimizes what the record actually says." (Document No. 12, pp.3, 7).

In his decision, the ALJ states:

> I have considered the opinion of Dr. Matthew Harrison who opined in a medical source statement on October 21, 2009 that the claimant has severe limitations due to depression. This is inconsistent with the entire evidence of record, including the claimant's own allegations of impairments which did not include depression. (Exhibit 3B). According to a Report of Contact with the claimant on August 23, 2008, she did not allege any significant limitation from any mental condition and none was suggested in the medical evidence of record. (Exhibit 11F). Dr. Harrison also listed significant limitations of her hands and postural limitations. However, they are also inconsistent with the evidence of record at hand. For example, on March 13, 2009, the claimant was examined by Dr. Hipp and on neurological exam, her lower extremities were normal as was her gait.

(Tr. 17, 340).

The ALJ then finds:

> I give greater weight to Dr. Hipp's opinion that a pain clinic is better for the claimant than surgery. This is confirmed by his treatment notes and the evidence of record as a whole. Therefore, I give the most weight to Dr. Hipp and the physicians at the State Agency who concluded that the claimant has no evidence of any impairment severe enough to prevent her from performing all types of work activity.

Id.

The undersigned finds the ALJ adequately addresses the weight given to Dr. Harrison's opinion. The ALJ references various inconsistencies in the record, and specifically states that he considered the opinion of Dr. Harrison in his review, but that he gave "the most weight to Dr. Hipp and the physicians at the State Agency." Id. It appears that the ALJ properly considered evidence of record, and stated with particularity the weight afforded to certain medical records. Id.

Additionally, Plaintiff states that the ALJ failed to mention objective evidence regarding Dr. Harrison's opinion concerning Plaintiff's disc herniation, formanial stenosis, and positive straight leg raise. (Document No. 12, p.3). Contrary to Plaintiff's assertion, the undersigned finds that the ALJ specifically references Plaintiff's formanial stenosis and disc herniation; and generally indicates appropriate consideration of Dr. Harrison's records as a whole. (Tr. 14-17) (citing, *inter alia*, Tr. 285-291). The undersigned notes that the ALJ is not required to "recite findings on each factor, but must give specific reasons for the weight given to the individual's statements," which the undersigned finds the ALJ's decision adequately provides. See SSR 96-7p.; (Tr. 17).

### 2. John A. Welshofer, M.D.

Next, Plaintiff asserts that the ALJ failed to adequately consider the opinion of John A. Welshofer, M.D. ("Dr. Welshofer"), Plaintiff's treating physician. (Document No. 12, p.7). Plaintiff suggests that "the ALJ's failure to even mention Dr. Welshofer's opinion produces a

9

gross injustice explainable only by the Commissioner's great press of business." (Document No. 12, p.8). Plaintiff argues that even though "Dr. Welshofer's opinion supports Dr. Harrison's MSS [Medical Support Statement] . . . there is no reason why Dr. Welshofer's opinion needs to be reduced to a supporting role." Id.

Defendant acknowledges the ALJ's failure to refer directly to Dr. Welshofer's opinion. (Document 15-1, p.12). However, Defendant argues Dr. Oberer's consultative examination, which the ALJ clearly refers to, specifically discusses Dr. Welshofer's clinical findings and opinion. (Document No. 15-1, p.13) (Tr. 16, 313-315). Also, Defendant contends that Dr. Jessup, a consultative examiner, reviewed "Dr. Welshofer's conclusions and determined that they were inconsistent with Dr. Welshofer's own clinical findings that Plaintiff had normal coordination, strength, sensation, and gait/station." (Document No. 15-1, p.13) (Tr. 323).

Plaintiff asserts that Dr. Welshofer's opinion that claimant "would need position changes as necessary with no prolonged sitting or standing" was an important opinion that was ignored. But as Defendant pointed out, the ALJ specifically incorporated a sit/stand feature in his residual functional finding. (Document No. 15-1, pp.12-13); (Tr. 15). The ALJ specifically found that:

> the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except limited to sitting not more than one hour at a time or standing not more than 30 minutes at a time, that accommodates a change of position from sitting to standing or vice versa at those times, that is, alternating throughout the day.

(Tr. 15). Therefore, even if the ALJ failed to specifically address Dr. Welshofer's opinion, the failure was harmless, because the ALJ did incorporate a sit/stand option to address position changes. See Dover v. Astrue, No. 1:11-CV-120-DLH, 2012 WL 1416410 at *5 (W.D.N.C. Mar 19, 2012) ("even assuming that the ALJ did err, such error by the ALJ was harmless because remand would not lead to a different result.").

Additionally, the undersigned is persuaded that the ALJ provided some references to Dr. Welshofer's records. For example, throughout the decision, the ALJ references Carolina Neurosurgery and Spine, which is where both Dr. Welshofer's and Dr. Oberer's office records originated. (Tr. 15, 16, 17). Furthermore, Dr. Welshofer referred the claimant to Dr. Oberer, and Dr. Oberer's records and opinions are referenced throughout the decision. (Tr. 15, 16, 17, 313). Notably, the ALJ states that "[o]n February 7, 2008, a 'CT myelogram showed noncompressive disk bulging but not significant central or formanial stenosis.'" (Tr. 14, 16) (quoting Tr. 305). This medical finding comes directly from Dr. Welshofer's records and the ALJ's decision refers to this fact at least twice in his decision. (Tr. 14, 16, 305). The undersigned finds that the ALJ adequately considered Dr. Welshofer's records in his analysis.

**B. Severe Impairment Considerations**

In her third assignment of error, Plaintiff asserts that the ALJ failed to consider Plaintiff's diagnosed obesity as a severe impairment at step 2, or at any other step, in the ALJ's analysis. (Document No. 12, p.8). Plaintiff cites to SSR 02-01: "the combined effects of obesity with other impairments may be greater than might be expected without obesity." Id. Plaintiff argues that "the ALJ's failure to regard Thompson's obesity as a severe impairment at step two, together with his failure to seriously consider obesity at any later time in his decision, precludes any notion that he considered the effects of obesity on Thompson's knee and back pain." (Document No. 12, p.9).

Defendant counters that "courts generally will not remand for explicit findings regarding obesity where it would not affect the outcome." (Document No. 15-1, p.14). Defendant further contends that even if "the ALJ technically erred in failing to articulate his findings regarding Plaintiff's obesity, any harm is mitigated by the ALJ's discussion of the opinions of two doctors

11

who addressed Plaintiff's obesity without assessing any work-related limitations." (Document No. 15-1, p.15).

SSR 02-1p reminds the ALJ to:

> consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity and other impairments can be greater than the effects of each of the impairments considered separately.

This Court has held that "remand is not required so that the ALJ can explicitly consider a claimant's obesity where, like in this case, it would not impact the outcome of the case." McKinney v. Astrue, 1:11-CV-199-DLH, 2012 WL 6931344 at *3 (W.D.N.C. Dec. 11, 2012); see also Skarbek v. Barnhart, 390 F.2d 500, 504 (7th Cir. 2004); Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3rd Cir. 2005).

In McKinney, the Court held that Plaintiff's failure to "set forth how her obesity further impaired her ability to work," or to provide an "explanation of how her obesity would have impacted the ALJ's five-step analysis" does not warrant remand. McKinney, 2012 WL 6931344 at *3. Also, this Court found the ALJ's failure to explicitly address Plaintiff's obesity was offset by the ALJ's implicit inquiry regarding her obesity. Id.; see also, Skarbek, 390 F.2d at 504; Rutherford, 399 F.3d at 552-54; Coldiron v. Comm'n of Soc. Sec., 391 F. App'x 435, 443 (6th Cir. 2010). For example, the ALJ asked Plaintiff her height and weight at the hearing and the ALJ adopted physicians' records that "were aware of the obesity." Id.

Accordingly, the undersigned finds that remand is not required for the ALJ to explicitly consider Plaintiff's obesity. The ALJ references the opinions and records of Dr. Oberer, Plaintiff's treating physician, and the State Agency physicians, who specifically discuss Plaintiff's obesity. (Tr. 16, 17, 315, 324, 354). Further, analogous to McKinney, at the hearing,

the ALJ inquires about Plaintiff's height and weight. (Tr. 29-30). Additionally, Plaintiff does not mention any symptoms or concerns with her obesity at the hearing, does not list obesity on her initial application, and does not articulate in her brief how the alleged impairment specifically affects her ability to work. (Tr. 29-47, 123) (Document No. 12, pp.8,9). In light of these findings and the record as a whole, the undersigned finds the ALJ did not fail to either qualify obesity as a severe impairment or to consider obesity in his RFC analysis.

### C. Vocational Expert's Testimony

Next, Plaintiff argues that the ALJ erred when he accepted the Vocational Expert's ("VE") testimony without an explanation as to why his testimony should be credited. (Document No. 12, p.9). Specifically, Plaintiff alleges that the ALJ's analysis does not provide substantial evidence to resolve any conflict:

> When the ALJ asked the VE whether his testimony was in conflict with the DOT, the VE answered it was, because the DOT does not provide for a sit/stand option. The ALJ did not ask the VE to explain why his testimony should be accepted over the DOT, however, and the VE offered no explanation.

Id.; (Tr. 50).

In regard to the VE's testimony, the ALJ notes:

> the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. In response to a hypothetical question posed to the vocational expert via a vocational interrogatory, the vocational expert stated that given all of these factors the individual would be able to perform the requirements of representative occupations such as cashier II, Dictionary of Occupational Titles (DOT code 211.462-010 (3,500 jobs in North Carolina and 104,000 jobs nationally, bench assembler, DOT code 706.684-042 (24,000 jobs in North Carolina and 540,000 jobs nationally) and mail clerk, DOT code 209.587-026 (3,000 jobs in North Carolina and 140,000 jobs nationally). With regard to sit/stand option, the vocational expert also stated that the DOT does not speak direct[ly] to

13

> sit/stand options. He added that his answers are based on his experience and the literature.

(Tr. 19); see also, (Tr. 48-50, 177). The ALJ then opined that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 19).

SSR 00-4p requires the ALJ to "identify and obtain reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT)." SSR 00-4p. "The vocational expert's conflicting testimony can be used . . . if the ALJ finds that it is based on other reliable publications or the expert's own experience in job placement or career counseling." Fisher v. Barnhart, 181 F. App'x. 359, 365 (4th Cir. 2006) (internal quotations omitted). Further, this Court has previously held that in regard to a sit/stand option, "no conflict existed between the VE's testimony and the DOT. The DOT is silent as to the availability of a sit/stand option for these particular positions; as such, it was entirely proper for the ALJ to obtain and consider VE testimony in order to supplement the DOT job descriptions." Lusk v. Astrue, 1:11-CV-196-MKR, 2013 WL 498797 at *5 (W.D.N.C. Feb. 11, 2013) (citing Hynes v. Barnhart, No. Civ. 04-CV-490-SM, 2005 WL 1258747 at *4 (D.N.H. Jun. 15, 2005)); see also, Green v. Colvin, 1:10-CV-561-JLW, 2013 WL 3206114 (M.D.N.C. Jun. 24, 2013); McFalls v. Astrue, 1:10-CV-063-MKR, 2011 WL 6000513 at *6 (W.D.N.C. Nov. 30, 2011).

The undersigned finds the ALJ's reliance on the VE's testimony appropriate. First, the undersigned finds probative that the ALJ specifically asked the VE whether his responses were "consistent with the DOT." (Tr. 50). The VE responded "that's correct, but for the fact that the DOT does not cover/sit stand options." (Tr. 19, 50). As noted above, case law supports the

14

ALJ's incorporation of a sit/stand option based on the VE testimony. See, Lusk, 20013 WL 498797 at *5; McFalls, 2011 WL 600513 at*6; Hynes, 2005 WL 1258747 at *4.

Notably, after the hearing, the ALJ sent the VE a "Vocational Interrogatory" for further information. (Tr. 175-178). The interrogatory specifically asked the VE: "[a]re there any conflicts between the occupational evidence you have provided . . . and the occupational information contained in the DOT and/or the SCO?" (Tr. 177). The VE checked yes and wrote "[t]he DOT does not speak to the issue of sit/stand options. (My answer is based on professional experience and the literature.)" In conclusion, the undersigned is satisfied that the ALJ sufficiently "identified and relied on a reasonable explanation" of the VE's findings. SSR 00-4p; see also, Fisher, 181 F. App'x. at 365.

### D.     Credibility

In Plaintiff's last assignment of error, she contends that the ALJ's decision does not adequately support the finding that Plaintiff's pain testimony was not credible. (Document No. 12, p.10); (Tr. 16-17). Plaintiff argues that her testimony that "she takes walks with a friend, cooks, does household chores, and goes grocery shopping . . . does not amount to substantial evidence capable of casting Thompson as a malingerer." (Document No. 12, p.10). Plaintiff asserts that "the ability to perform substantial gainful activity is not shown by the ability to do housework, albeit with pain." (Document No. 12, p.12) (quoting Turner v. Sullivan, R-89-448, 1989 WL 280304 at * 8 (D. Md. 1989)).

Defendant argues that the ALJ properly explained "Plaintiff's subjective complaints of disabling symptoms were not substantiated by objective laboratory or clinical findings, and furthermore, were inconsistent with her reported daily activities, her conservative course of treatment, and the documented improvement of her symptoms with treatment." (Document No,

15

15-1, p.19) (citing Tr. 16-17). Defendant further argues that Plaintiff's claim that the ALJ solely focused on Plaintiff's "daily activities is misdirected, as this was merely one factor among several that the ALJ considered in discounting Plaintiff's credibility, and the other bases find substantial support in the record." (Document No. 15-1, pp.20-21).

The undersigned notes that once the ALJ determines that the claimant "has an objectively identifiable medical impairment that could reasonably cause the pain of which she complains . . . then, and only then, should it undertake an assessment into the credibility of [her] subjective claims of pain." Craig, 76. F3d at 596. The court in Craig specifically held that:

> [i]t is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

Id. at 596.

The ALJ will consider such factors as Plaintiff's medical history, laboratory findings, treatment history, and reported daily activities when evaluating Plaintiff's credibility. 20 C.F.R. §§ 404.1529(c), 416.929(c). The decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. The court is "empowered to review the ALJ's decisions for substantial evidence, and find that substantial evidence supports the ALJ's credibility assessment." Johnson, 434 F.3d at 658 (citing Craig, 76 F.3d at 594 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on . . . the ALJ.")) 

Here, after the ALJ determined that Thompson had an "objectively identifiable medical impairment," the ALJ undertook a credibility analysis of Plaintiff. The ALJ stated:

> The claimant's testimony as to the intensity and limiting effects of her symptoms is not persuasive in view of her daily activities. She cooks, does household chores and goes grocery shopping. The claimant testified that she even cooked the night before the hearing. She also testified that she gets groceries although her husband and daughter go with her. She also goes to the movies once a month and goes walking with a partner. According to Exhibit 7F, the claimant is able to ambulate, care for her personal needs, perform light chores and drive without assistance. (Exhibits 7E-8E and testimony).

(Tr. 16) (citing Tr. 42-43, 299).

After finding Plaintiff's testimony unpersuasive, the ALJ opined:

> Since the claimant's testimony and subjective complaints are not entirely credible, the residual functional capacity finding must be made using more reliable evidence. I have given the most weight to the treatment records. . . . Dr. Daniel Oberer, a treating physician at Carolina NeuroSurgery and Spine, noted that the claimant's lower back was tender to palpation in an 'exaggerated fashion.' . . . I considered the opinion of Dr. Matthew Harrison who opined in a medical source statement on October 21, 2009 that claimant has severe limitations due to depression. This is inconsistent with the entire evidence of record, including the claimant's own allegations of impairments which did not include depression. . . . Dr. Harrison also listed significant limitations of her hands and postural limitations. However, they are also inconsistent with the evidence of record at hand. . . . I give the most weight to Dr. Hipp and the physicians at the State Agency who concluded that the claimant has no evidence of any impairment severe enough to prevent her from performing all types of work activity.

(Tr. 16-17, 315).

The undersigned finds that the ALJ used the appropriate factors, such as medical history, treatment history, and reported daily activities, when evaluating Plaintiff's credibility. 20 C.F.R. 404.1529(c), 416.929(c). For example, the ALJ used Plaintiff's testimony as to her daily activities, such as cooking, completing chores, grocery shopping and going to the movies with her friends. (Tr. 16, 42-45). The ALJ further used the medical and treatment history, as

17

referenced above, to evaluate Plaintiff's credibility. The undersigned is not convinced, as Plaintiff suggests, that the ALJ "cherry picked" or failed to cite persuasive evidence in regard to Plaintiff's credibility. (Document No. 12, pp.10-12). The undersigned finds the ALJ provided substantial evidence to support finding Plaintiff not credible.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be **AFFIRMED**.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 11) be **DENIED**; "Defendant's Motion For Summary Judgment" (Document No. 15) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).

Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316;  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989);  Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

    **IT IS SO RECOMMENDED**.

Signed: July 26, 2013

David C. Keesler
United States Magistrate Judge